IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSE A. GONZÁLEZ-MARTÍNEZ,

     Plaintiff,

        v.                            CIVIL NO.: 10-1872 (MEL)

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.

## OPINION AND ORDER

### I.   PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff José González Martínez ("plaintiff" or "claimant") was born in 1962.  Tr. 20. He completed three years of college and was employed as a nurse at a nursing home for fourteen years until his conditions made him unable to work on June 30, 2005.  Tr. 44-45, 49.  Plaintiff states that he suffers from an emotional condition, back pain, and HIV.  Tr. 44, 86.

On January 3, 2006, plaintiff filed an application for Social Security Disability Insurance benefits, alleging disability beginning on June 30, 2005.  Tr. 14.  Plaintiff's application was denied initially on August 24, 2006 as well as on reconsideration on December 14, 2007.[1]  Tr. 14, 51-56.  Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ") which he failed to attend on September 30, 2008.  Tr. 14, 22-37.  He waived his right to appear and testify and was instead represented by an attorney who requested that a decision be

---

[1] According to the Appeals Council's action, plaintiff filed a new application on October 21, 2009 and was found disabled beginning November 27, 2008 because he had been diagnosed with pneumocystis pneumonia and his impairments therefore met the severity of 20 C.F.R. Part 404, Subpart P, Appendix 1, section 14.08.B.7.  Tr. 2.  The Appeals Council found that this information did not warrant a change in the ALJ's decision because the record does not show that plaintiff was "diagnosed with an opportunistic disease before the hearing decision."  Tr. 2.  Section 14.00F3 notes that there must be "documentation of the manifestations of HIV infection," which involves evidence of "opportunistic diseases or conditions."  Section 14.08 is a list of opportunistic infections, one of which must be proven to establish HIV infection.

issued based on the evidence of record.  Tr. 14, 57.  On November 26, 2008, the ALJ rendered a decision denying plaintiff's claim.  Tr. 8-21.  The Appeals Council denied plaintiff's request for review on July 28, 2010, and the ALJ's decision thus became the final decision of the Commissioner of Social Security ("Commissioner" or "defendant").  Tr. 1-6.

On September 10, 2010, plaintiff filed a complaint in this court seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) and Title 5 U.S.C. 706, claiming that the ALJ's decision was not based on substantial evidence.  Docket No. 1.  Defendant filed an answer on February 18, 2011 and filed a certified transcript of the administrative record on February 24, 2011.  Docket. No. 11, 12.  Both parties have submitted supporting memoranda.  Docket No. 21, 22.  For the reasons set forth below, the court finds that substantial evidence supports the Commissioner's decision and it is therefore affirmed.

## II.   LEGAL STANDARDS

### A.   Standard of Review

Once the Commissioner has rendered his final decision on an application for disability benefits, a district court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence.  Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error."  López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

2

Additionally, "[t]he findings of the Commissioner [ ] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health and Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Irlanda Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Irlanda Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B.      Disability under the Social Security Act**

To establish entitlement to disability benefits, the claimant bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146-47 (1987). An individual is deemed to be disabled under the Social

Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520 (2012); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Bowen, 482 U.S. at 140-42.  If it is determined that the claimant is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step.  At step one, it is determined whether the claimant is working and thus engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If so, then disability benefits are denied.  20 C.F.R. § 404.1520(b).  Step two requires the ALJ to determine whether the claimant has "a severe medically determinable physical or mental impairment" or severe combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  In step three, the ALJ determines whether the claimant's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. part 404, subpart P, appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, then the claimant is conclusively found to be disabled.  20 C.F.R. § 404.1520(d).  If not, then the ALJ goes on to step four and assesses whether the claimant's impairment or impairments prevent him from doing the type of work he has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  If the ALJ concludes that the claimant's impairment or impairments do prevent him from performing his past relevant work, the analysis then proceeds to step five.  At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC")[1] combined with his age, education, and work experience allows him to

---

[1] An individual's residual functional capacity is the most that he can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1).

perform any other work that is available in the national economy.   20 C.F.R. §
404.1520(a)(4)(v).

### III.    THE ALJ'S FINDINGS

After evaluating the evidence on record, the ALJ made the following findings:

1.  The claimant met the insured status requirements of the Social Security Act through
    September 30, 2010.  Tr. 16.

2.  The claimant was a young individual (age 18-49) on the alleged disability onset date, June
    30, 2005.  Tr. 20.

3.  The claimant has at least a high school education and is unable to communicate in English.
    Tr. 20.

4.  The claimant had not engaged in substantial gainful activity since his alleged onset date of
    June 30, 2005.  Tr. 16.

5.  The claimant has the following severe impairments: "discogenic disease of the lumbar spine"
    and "major depressive disorder, moderate."  Tr. 16.

6.  The claimant does not have an impairment or combination of impairments that meets or
    medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
    Tr. 17.

7.  The claimant has the residual functional capacity to perform the full range of light work as
    defined in 20 C.F.R. § 404.1567(b).  He can lift no more than twenty pounds at a time with
    frequent lifting or carrying of objects weighing up to ten pounds.  He can also do sedentary
    work.  The claimant is able to engage in unskilled mental functions.  He can understand,
    remember and carry out simple instructions; use judgment in simple work-related situations;
    respond appropriately to supervisors, co-workers and usual work situations; deal with

changes in a routine work setting; tolerate criticism and normal work production stress; and

meet regular attendance and production schedules.  Tr. 18.

8.  The claimant is unable to perform any past relevant work.  Tr. 20.

9.  The claimant has no transferable skills within this residual functional capacity.  Tr. 20.

10. The claimant has acquired work skills from past relevant work that are transferable to other

occupations with jobs existing in significant numbers in the national economy.  Tr. 20.

11. The claimant was not under a disability as defined in the Social Security Act from June 30,

2005, the alleged onset date, through the date of the ALJ's decision, November 26, 2008.  Tr.

21.

## IV.   THE MEDICAL EVIDENCE CONTAINED IN THE RECORD

The certified medical record contains, *inter alia*, the following medical evidence

regarding plaintiff's conditions:

Plaintiff tested positive for HIV in March 2002.  Tr. 341.  In September 2003, he began a

course of antiretroviral treatment.  Tr. 16.  His viral load was good and his condition was stable

while on medication.  Id.  There is no evidence of treatment between April 2004 and November

2006 when he was again placed on medication.  Id.  By April 2007 his viral load had increased to

433 and his T-helper cell count had decreased to 13, but he missed his follow-up appointment.

Id.  Therefore, there are no treatment records to document the claimant's HIV status at the time

of the ALJ's decision.  Tr. 17.

In April 2004, the claimant injured his lower back at work and developed severe lower

back pain due to a herniated disc.  Tr. 17, 110.  He was treated with acupuncture through the

State Insurance Fund and developed an infection in one of the chest points.  Tr. 17, 104.  After

this, he became depressed.  Tr. 104.  Diagnostic testing performed in April 2005 showed disc

space narrowing at L5-S1.  Tr. 19.  A CAT scan performed in May 2005 was negative.  Id.  In

that same month, the State Insurance Fund determined he had suffered a left pectoral strain, left

forearm strain, and a lumbar strain, none with disabling residuals.  Tr. 19, 158.  In November

2005, EMG of the lower extremities showed a bilateral S1 radiculopathy.  Tr. 19.  The ALJ

noted that, from a May 2006 neurological examination performed by Dr. Samuel Méndez,

plaintiff was "essentially intact," Tr. 19, except for "[t]ender cervical and lumbar paraspinal

muscles" and "[s]trength of 5/5 symmetrically in all extremities except for psoas 4/5 (limited by

pain)," Tr. 528.   X-rays showed osteopenia of the cervical and thoracic spine.   Tr. 19.

Dr. Méndez, an examining neurologist, noted that the plaintiff walked with an antalgic gait with

the assistance of a cane, but he was not dependent on it.   He diagnosed chronic cervicalgia,

lumbalgia, and lumbrosacral syndrome.  Id.  In July 2006, MRI of the lumbar spine showed disk

desiccation and disk bulges at L4-L5 and L5-S1, but a repeat MRI in September of that year was

negative, showing no evidence of disc herniations.   Id.   The state agency medical consultants

thought that the claimant had the residual functional capacity for medium exertion work.  Id.

Plaintiff was first hospitalized for his emotional condition in October 2005 when he was

diagnosed with major depression and assigned treatment through the State Insurance Fund.  Tr.

47, 218-19.   He started another round of treatments with psychiatrist Dr. Alberto Rodríguez

Robles in September 2006 where he was diagnosed with depression.  Tr. 104-07.  The doctor

noted that his thought flow was adequate, logical, coherent, and relevant and he did not have any

perceptual disorders.  Tr. 106.  This doctor referred him for partial hospitalization in October

2006, due to the development of an "emotional condition" caused by "an abscess after

acupuncture."  Tr. 99-102, 231.

In June 2006, consulting psychiatrist Dr. Armando Caro examined plaintiff and diagnosed him with a major depressive disorder and a pain disorder associated with his medical condition.  Tr. 543-44.  This doctor wrote that he was anxious, oriented, had fair concentration and preserved memory, his judgment and insight were fair, and he had impaired capacity for social interaction.  Id.

In August 2006, state agency psychiatrist Dr. Jeanette Maldonado conducted an evaluation of plaintiff's medical history.  Tr. 548-65.  She found him to have a depressive disorder due to pain.  Tr. 551.  His activities of daily living were mildly restricted, he had mild difficulties in maintaining social functioning and concentration, persistence, or pace, and had one or two episodes of decompensation of extended duration.  Tr. 558.  She also found that his understanding and memory, sustained concentration, persistence, and adaptation were not significantly limited.  Tr. 562-63.  His ability to complete a normal workday without interruptions from psychological symptoms and to perform at a consistent pace without an unreasonable number of rests was moderately limited.  Tr. 563.  His ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors was also moderately limited.  Id.  She additionally found, somewhat paradoxically, that "he is able to understand, remember and perform simple and complex tasks within the weekly demands of pace," and can concentrate for more than two hour periods, but "he can't perform complex tasks due to his [depressive] reactions."  Tr. 564.

He was hospitalized again in December 2006 and was diagnosed with a schizoid-affective disorder.  Tr. 88.  He was again referred for hospitalization in July 2007, where he was diagnosed by Dr. Jorge Santiago with severe recurrent major depression.   Tr. 234-35.  Dr. Santiago noted on discharge that the plaintiff was alert, oriented, logical, coherent, relevant,

had appropriate affect, and his current Global Assessment of Functioning ("GAF") was 50 but his best of the year was 60.[2]  Tr. 235.  Dr. Hugo Román Rivera, a state agency psychiatrist, reevaluated plaintiff's case in December 2007 and found that his condition was moderate.  Tr. 604-21.

## V.  LEGAL ANALYSIS

The findings of the ALJ reflect an application of the fifth step of the sequential evaluation process in which the Commissioner must prove the existence of other jobs in the national economy that the plaintiff can perform.  See 20 C.F.R. § 404.1520(g).  In denying plaintiff's claim under this step, the ALJ first determined that plaintiff has:

> [T]he residual functional capacity to perform the full range of light work [lift and carry 10 pounds frequently and lifting no more than 20 pounds at a time]. . . . [H]e can also do sedentary work. . . . [He is] able to engage in unskilled mental functions.  Unskilled work requires [one] to understand, remember, and carry out simple instructions, use judgment in simple work-related situations, respond appropriately to supervisor, co-workers and usual work situations, deal with changes in a routine work setting, tolerate criticism and normal work production stress and meet regular attendance and production schedules.

Tr. 18.  Based on this finding, the ALJ asked the vocational expert whether jobs exist in the national economy for an individual with plaintiff's age, education, work experience, and residual functional capacity and concluded that he was capable of successfully adjusting to other work that exists in significant numbers in the national economy, such as Surgical Instruments Inspector or Hospital Products Assembler.  Tr. 21.  Therefore he determined that plaintiff was not under a disability, as defined in the Social Security Act, through the date of that decision.  Id.

---

[2] The GAF "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'"  Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) ["DSM–IV"], quoted in Langley v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004).  It "considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  DSM–IV at 34 (brackets omitted), quoted in Echandy-Caraballo v. Astrue, 2008 WL 910059 at *4 n.7 (D.R.I. Mar. 31, 2008).  A GAF between 51 and 60 "indicates the individual has '[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning . . . .'"  Pate-Fires v. Astrue, 564 F.3d 935, 938 (8th Cir. 2009) (quoting DSM–IV at 32).

The ALJ noted that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms he alleged, but found plaintiff's allegations as to the "intensity, persistence and limiting effects of these symptoms" were not credible as they were inconsistent with the residual functional capacity assessment.  Tr. 19.  The ALJ decided that plaintiff's HIV impairment was nonsevere, noting that there are no treatment records to document his current HIV status because he missed his follow-up appointment and two schedule consultative examinations.  Tr. 16-17.

Plaintiff argues that the decision of the Commissioner is not supported by substantial evidence nor used the correct legal standards because the Commissioner did not fulfill his burden of proving the existence of other jobs in the national economy that the claimant can perform. Docket No. 21, p. 7.  In so contending, he raises a wide variety of objections: 1) the ALJ did not properly weigh the treating source's opinions, 2) the ALJ improperly interpreted raw medical data regarding plaintiff's HIV when he should have enlisted the assistance of a medical expert, 3) the ALJ erred in finding plaintiff did not have a substantial loss of ability to meet more than one basic work-related activity, and 4) the hypotheticals posed by the ALJ to the vocational expert did not convey all of plaintiff's limitations and therefore ignored vital medical evidence and failed to comply with the correct legal standards.  Docket No. 21, pp. 9-23.

A.      **Weight of Treating Physicians' Opinions**

Plaintiff alleges that the ALJ ignored the medical reports by the treating sources and the examining psychiatric consultant Dr. Caro regarding his emotional condition.  Docket No. 21, p. 12.  The ALJ will evaluate all medical opinions he receives "[r]egardless of its source" unless a treating physician's opinion is given controlling weight.  20 C.F.R. § 404.1527(d) (2012).  To be given controlling weight, the treating physician's opinion must be "'well-supported by medically

acceptable clinical and laboratory diagnostic techniques and … not inconsistent with the other substantial evidence in [the] record.'" Polanco-Quinones v. Astrue, 11-1618, 2012 WL 1502725, at *1 (1st Cir. May 1, 2012) (quoting 20 C.F.R. § 404.1527(d)(2)). The ALJ, however, is not always required to give controlling weight to the opinions of treating physicians. Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987); Rivera-Tufino v. Comm'r of Soc. Sec., 731 F. Supp. 2d 210, 216 (D.P.R. 2010). Rather, the ALJ can give less weight to a treating physician's opinion if he has good reason to do so. Pagán-Figueroa v. Comm'r of Soc. Sec., 623 F. Supp. 2d 206, 210-211 (D.P.R. 2009) (citing Carrasco v. Comm'r of Soc. Sec., 528 F. Supp. 2d 17, 25 (D.P.R. 2007)).

Here, the ALJ did not give greater weight to the treating sources and Dr. Caro's opinion because they were not supported by substantial record evidence. Dr. Caro found plaintiff's capacity for social interaction impaired because of his interaction with plaintiff, but the ALJ found this contrary to the evidence since the plaintiff had a long-term live-in boyfriend, lived with his mother, and got along well with his brother. Tr. 18. Moreover, none of the doctors who completed an RFC assessment found plaintiff to have marked difficulties in social functioning. See Tr. 558, 563, 615, 620. Inconsistency and unsupported findings are reasons not to give a physician's opinions controlling weight. See Haidas, 2010 WL 1408618 at *2. The ALJ considered the treating physician's opinions regarding the severity of plaintiff's depression, but in view of the record as a whole, found them not to be persuasive. Treating psychiatrist Dr. Santiago found plaintiff's depression to be severe, Tr. 236, but Dr. Caro, Dr. Viviana Díaz, and Dr. Román Rivera all found plaintiff's major depressive disorder to be moderate. Tr. 544, 546, 604. On March 3, 2006, another treating source from the State Insurance Fund noted that

plaintiff "dramatizes his situation" and "talks about hospitalizations in order to avoid the presence of his partner."  Tr. 119.

Plaintiff argues that the ALJ should have taken into account Dr. Caro's assessment of plaintiff's GAF of 50.  Docket No. 21, p. 12.  The ALJ did consider this opinion, writing that "Dr. Caro noted that the claimant's social functioning was impaired," but found that it was not consistent with the evidence in the record, which demonstrated that claimant had "mild difficulties" in social functioning because plaintiff had a long-term live-in boyfriend, lived with his mother, and got along well with his brother.  Tr. 18.  Moreover, this score was not representative of plaintiff's functioning during the entire period of review since in June and December of 2006 his GAF score was 60, and in July 2007 his attending physician noted his highest GAF of the year was 60.  Tr. 544, 88, 236.

Plaintiff further argues that the non-examining physicians' RFC assessment cannot be substantial evidence to support the ALJ's findings because these physicians' reports fail to provide specific reasons for the physicians' conclusions.  Docket No. 21, pp. 14-15.  However, this allegation is unfounded; the reports of the three non-examining state agency physicians cited by plaintiff each provided reasons for the conclusions they drew.  Dr. Maldonado mentioned the symptoms and examinations she considered in coming to her conclusions.  Tr. 551, 564. Dr. Gilberto Fragoso cited the specific facts and evidence on which he based his conclusions as well.   Tr. 568.   Dr. Román Rivera noted the evidence he considered in reaching his determination, such as plaintiff's partial hospitalizations, descriptions of his mental states, and his condition at discharge.  Tr. 621.

**B.      Interpretation of Raw Medical Data**

Plaintiff contends that the ALJ erred by interpreting raw medical data about plaintiff's HIV condition instead of using a medical expert to assess the severity of this disease. Docket No. 21, p. 12. In general, medical expert opinions are required for the ALJ to determine the extent to which a claimant's medical conditions limit his ability to perform work-related activities. To evaluate a claimant's RFC, an ALJ cannot rely on raw medical data; rather, he must look to physician's opinions to translate that evidence into functional terms. See Vega Valentín v. Astrue, 725 F. Supp. 2d 264, 271 (D.P.R. 2010) (citing Berríos López v. Sec'y of Health and Human Servs., 951 F.2d 427, 430 (1st Cir. 1991) (per curiam); Rosado v. Sec'y of Health and Human Servs., 807 F.2d 292, 293 (1st Cir. 1986)).

In this case, the ALJ did not interpret raw data from the medical record in determining that plaintiff's HIV was not a severe impairment; rather, he relied on medical opinions from Centro de Inmunología Regional and the lack of any medical evidence to the contrary. In September 2003, the doctor from the Centro de Inmunología Regional noted that plaintiff's viral load was "good" and his condition was stable on medication. Tr. 342. There is no evidence of treatment between April 2004 and November 2006 when plaintiff was again placed on medication. Tr. 16, 344. Although lab tests show that plaintiff's viral load had increased and his T-helper cell count decreased by April 2007, he missed his follow-up appointment and two schedule consultative appointments. Tr. 16. At this step of the sequential evaluation process, the plaintiff has the burden to prove that he has a medically determinable severe impairment. Ramos v. Barnhart, 60 Fed. Appx. 334, 335 (1st. Cir. 2003) (citing Bowen, 482 U.S. at 146 n.5). Although plaintiff claimed that he was too weak to attend the consultative examinations and administrative hearing, there are no treatment records documenting plaintiff's HIV status at the

time of the ALJ hearing; plaintiff therefore failed to meet his burden to prove how the impairment impacts his functioning.  Plaintiff failed to establish that his functional capacity was limited due to his HIV, therefore the ALJ did not err in evaluating his RFC without regard for his HIV condition.

Plaintiff argues that the ALJ erred by not referencing Section 14.08, containing the listing requirements for individuals who are HIV positive.  Docket. No. 21, p. 20.  However, the ALJ's consideration was even broader because he considered whether plaintiff's impairments met any listing under Section 14.00 <u>et seq.</u>—which encompasses all immune system disorders, including HIV—and concluded that his HIV was stable with medication.  Tr. 17; <u>see also</u> <u>supra</u> Part I n.1.  Section 14.08 requires the presence of an opportunistic disease and there is no evidence plaintiff was diagnosed with one before the ALJ's decision.  20 C.F.R. § 404, subpt. P, app. 1 (2012).  Plaintiff had the burden at this step and failed to present evidence establishing that his impairment met or equaled Listing Section 14.08.

### C.    Ability to Perform Basic Work Related Activities

Plaintiff argues that due to his mental impairment, he cannot perform unskilled work because he has a substantial loss of ability to meet at least one of the basic work-related activities and therefore the ALJ erred in finding him not disabled.  Docket No. 21, p. 21.  A substantial loss of ability to meet any of the following basic work-related activities justifies a finding of disability: to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.  SSR 85-15, 1985 WL 56857 (1985).  At the ALJ hearing stage, the ALJ is responsible for determining the claimant's RFC.  20 C.F.R. § 404.1546(c) (2011).  In this assessment, the

judge can piece together the relevant medical facts from multiple physicians' findings.  See Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 144 (1st Cir. 1987).

Here, the ALJ's determination that plaintiff could perform unskilled work is well founded.  Plaintiff claims he would be very limited in interactions with other workers and would have limited capacity to understand and follow orders, however cites no doctor's opinion supporting this.  Docket No. 21, p. 21.  Dr. Maldonado found plaintiff's sustained concentration, persistence, understanding, memory, and adaptation not significantly limited.  Tr. 562.  The only social interactions related to the workplace she found moderately limited were plaintiff's ability to interact appropriately with the general public and his ability to accept instructions and respond appropriately to criticism from supervisors.  Tr. 563.  Dr. Román Rivera's findings were very similar except he found plaintiff's ability to respond appropriately to changes in the work setting moderately limited, but found his ability to accept instructions and respond appropriately to criticism from supervisors not significantly limited.  Tr. 619-20.

Plaintiff claims that the ALJ did not give due consideration to his statements and the statements of his mother and partner concerning the intensity, persistence, and limiting effects of his symptoms in rendering his decision.  Docket No. 21, p. 11.  However, the ALJ considered these statements but concluded they were not credible because they were inconsistent with his residual functional capacity assessment and the medical evidence of record.  Tr. 19.  Therefore, there was substantial evidence upon which the ALJ based his decision not to credit plaintiff's statements of the severity of his symptoms.

Social Security Ruling 96-7p explains how the ALJ should evaluate subjective claims about the limiting effects of symptoms on an individual's functional capacity.  See SSR 96-7p, 1996 WL 374186 (July 2, 1996).  The ALJ must make a specific finding about the credibility of

such statements.  Id. at 1.  This finding must be based on a consideration of all the evidence in the case record including, but not limited to, medical signs and laboratory findings; diagnosis, prognosis, and medical opinions by treating or examining physicians; and statements from the claimant, the claimant's physicians, or other individuals about the effects of the symptoms on the claimant's daily activities and work or efforts to work.  Id. at 5.  The ALJ weighed the statements that plaintiff was very weak, losing weight, soiled himself, had to wear diapers, slept all the time, and needed help getting dressed against the evidence and found them to be inconsistent. Dr. Caro noted that plaintiff was independent in all activities of daily living.   Tr. 543. Dr. Román Rivera found his activities of daily living only moderately limited and Dr. Maldonado found them mildly limited.  Tr. 615, 558.  His HIV condition was stable on medication and there were no treatment records documenting his current HIV status because he missed his follow-up appointments.  Tr. 16-17.  These doctor's opinions are substantial evidence upon which the ALJ discredited the subjective statements.

### D.       Hypotheticals Posed to the Vocational Expert

Plaintiff argues that the hypotheticals the ALJ posed to the vocational expert did not contain all of plaintiff's limitations and ignored medical reports of plaintiff's severe emotional condition and the impact of his HIV.  Docket No. 21, pp. 9, 11.  Hypotheticals posed to the vocational expert only need to "reasonably incorporate [ ] the disabilities *recognized by the ALJ*" for the expert's response to constitute substantial evidence.  Vélez-Pantoja v. Astrue, 786 F. Supp. 2d 464, 469 (D.P.R. 2010) (quoting Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994) (per curiam)) (alterations and emphasis in original).   Since the ALJ found plaintiff's HIV impairment to be nonsevere, he had a reasonable basis to leave the impairment out of the hypotheticals.  The ALJ did include plaintiff's allegations of the extent of his symptoms in the

hypotheticals, Tr. 30, but later found that they were not credible since they were controverted by medical evidence.

The hypothetical questions posed to the vocational expert must accurately reflect the claimant's functional work capacity.  <u>Vega-Valentín</u>, 725 F. Supp. 2d at 271 (citing <u>Arocho v. Sec'y of Health and Human Servs.</u>, 670 F.2d 374, 375 (1st Cir. 1982)).  This standard was met here.  The ALJ included the limitations he found credible in his RFC assessment.  He included plaintiff's nonexertional limitations by telling the vocational expert to "assume that this person could not perform skilled or semiskilled jobs."  Tr. 27.  He even asked whether plaintiff could perform the jobs the vocational expert had mentioned based on the limitations in the evidence from the State Insurance Fund, but the expert could not answer since the State Insurance Fund did not give residuals.  Tr. 29-30.  Plaintiff alleges that the ALJ should have included in the hypotheticals plaintiff's marked limitations in interacting with co-workers and supervisors and his ability to maintain attention and concentration.  Docket No. 21, p. 11.  However, these limitations were not at the marked level based on consulting physician's assessments and the evidence throughout the record.  Tr. 96, 117, 558-564, 615-621.

**VI.   CONCLUSION**

Based on the foregoing, it is hereby concluded that the Commissioner's decision was based on substantial evidence.  Therefore, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 27th day of September, 2012.

s/Marcos E. López
U.S. Magistrate Judge
